## HOCHSTEIN et al. v. VANDERVEER CROSSINGS, Inc.

(Supreme Court, Appellate Division, First Department. April 12, 1912.)

1. VENDOR AND PURCHASER (§ 155*)—CONTRACTS—COLLATERAL AGREEMENTS—OBLIGATION OF PURCHASER.

A statement reciting that the owner agreed to fill a creek extending along one side of the tract free to lot owners within a specified period was indorsed on the back of the contract for the sale of building lots. A conveyance would have been made to the purchaser prior to the time fixed for the filling had not the time for the conveyance been extended. The lots did not abut on the creek. *Held*, that the agreement to fill was collateral and independent, and the purchaser was not relieved from taking title merely because the owner had not filled in the creek within the time fixed, and, until the purchaser carried out his contract by acquiring title, he could not complain.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 309–313; Dec. Dig. § 155.*]

2. APPEAL AND ERROR (§ 1195*)—LAW OF THE CASE.

A decision of the court on appeal is the law of the case on a second trial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4661–4665; Dec. Dig. § 1195.*]

3. VENDOR AND PURCHASER (§ 351*)—BREACH OF CONTRACT—MEASURE OF DAMAGES.

Where an owner selling lots agreed in good faith to fill in a creek bordering on the track, but he was unable to perform the agreement because the creek was navigable, the damages recoverable by a purchaser refusing to complete the contract on that ground were the amount paid on the contract, with interest and reasonable disbursements for examining title.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 1047–1058; Dec. Dig. § 351.*]

Appeal from Trial Term, New York County.

See, also, 146 App. Div. 879, 130 N. Y. Supp. 1115.

Argued before INGRAHAM, P. J., and McLAUGHLIN, SCOTT, CLARKE, and DOWLING, JJ.

Charles C. Clark, for appellant. Abr. A. Silberberg, for respondent Hochstein. Julius G. Kremer, for respondent Feldman.

McLAUGHLIN, J. On the 23d of February, 1906, the defendant was the owner of a large tract of land in Kings county, which, according to a map and survey, it had subdivided into building lots. On that day it entered into a written contract with the plaintiffs, by which it agreed, in consideration of $8,800, to sell and convey to them lots 43 to 64, both inclusive, in block 36, as laid down on the map. Eight hundred and eighty dollars of the consideration was then paid, and equal monthly payments agreed to be thereafter made until one-half of the purchase price was paid, at which time defendant was to convey, taking back a purchase-money mortgage for the re-

maining unpaid one-half. On the back of the contract was a typewritten statement, signed by the president of the defendant as follows:

"It is agreed that the grading of Vanderveer Crossings, the filling in of the creek, the putting in of made roads, shade trees and sidewalks shall be accomplished free to lot buyers within three years from April 2, 1906."

The creek referred to is Fresh creek, a navigable stream subject to the ebb and flow of the tide, upwards of 200 feet in width, 50 feet in depth, and extends along the easterly side of defendant's tract of land to Jamaica Bay. The lots contracted to be purchased by the plaintiffs do not front on the creek, but are located at least 600 feet from it, on a street that runs approximately parallel with it at that point. The time fixed by the contract for the passing of title was over a year prior to the time fixed in the statement when the creek was to be filled in, but the date for the closing of title was adjourned from time to time until May 21, 1909. On that day the plaintiffs tendered to the defendant a sum sufficient to entitle them to a deed, and also tendered a purchase-money mortgage for the unpaid portion of the purchase price. The defendant tendered a deed, which the plaintiffs refused to accept because the creek had not been filled in, and they thereupon brought this action to recover damages, on the ground that the failure to fill in the creek was a breach of the contract to convey. The defendant put in issue the allegations of the complaint upon which a recovery was asked, and alleged affirmatively that at the time the contract was entered into it, in good faith, believed it was the owner of the bed of the creek referred to, having acquired the same by warranty deed, but thereafter it had been judicially determined it did not hold such title, for which reason it could not fill in the creek. The trial court charged the jury, in effect, if it found that the plaintiffs relied, in entering into the contract, upon the statement that the creek would be filled in, then they were entitled to damages, the measure of which was the difference between the contract price of the lots and their value on May 21, 1909, and in determining that question they might consider what the plaintiffs had paid. To such instructions exceptions were duly taken. The jury rendered a verdict of $16,500, and, from the judgment entered thereon and an order denying a motion for a new trial, defendant appeals. I am of the opinion the judgment appealed from should be reversed.

[1] The statement on the back of the contract to the effect that the defendant would fill in the creek "free to lot buyers within three years from April 2, 1906," was a collateral, independent agreement, in no way connected with or subject to the conveyance of the lots. This not only appears from the language used in the contract, but was what both parties understood and intended. By the contract, if the time to take title had not been extended, conveyance was to be made more than a year prior to the time when the creek was to be filled in. The fact that the time was extended did not change the independent and collateral agreement, or excuse the plaintiffs from taking title. Their right to have the creek filled in depended upon

their taking title. Until they carried out their contract by acquiring the title, they were not in a position to complain. The creek was to be filled in "free to lot buyers" within the time stated. The plaintiffs never purchased the lots. They refused to take the title. It is conceded, at least the fact is not disputed, that the deed tendered would have conveyed good title to the 22 lots, all of the land contracted to be conveyed. Defendant never agreed to convey any part of the bed of the creek or to give plaintiffs any interest in it.

[2] This is the second appeal. At the first trial the plaintiff had a verdict, which was set aside by the trial court on the ground that the jury had been erroneously instructed to the effect that the agreement to fill in the creek was not independent or collateral to the covenant to convey. On appeal the order was affirmed. 146 App. Div. 879, 130 N. Y. Supp. 1115. This became the law of the case, and, had it been followed, the second trial would have resulted in a dismissal of the complaint. The trial court, however, overlooked the decision or inadvertently failed to give effect to it by instructing the jury as above stated.

[3] If, however, the agreement to fill in the creek be treated, as I do not think it can, as one connected with and part of the covenant to convey, instead of an independent and collateral agreement, the same result must follow. The defendant sought to prove, as alleged in its answer, that, when the contract was executed, it, in good faith, believed it was the owner of the bed of the creek, but thereafter it was determined in judicial proceedings that it did not have such title. Such proof should have been admitted, and, had that been done, then the case would have been brought within the rule that where a defendant in good faith contracts to convey real estate, but at the time fixed for the closing is unable to do so because of the failure of title, through no fault of his own, then the measure of damage is the amount paid upon the contract, with interest, and reasonable disbursements made for examining the title. Cockcroft v. N. Y. & H. R. R. Co., 69 N. Y. 201; Northridge v. Moore, 118 N. Y. 420, 23 N. E. 570; Walton v. Meeks, 120 N. Y. 79, 23 N. E. 1115; Empire Realty Corporation v. Sayre, 107 App. Div. 415, 95 N. Y. Supp. 371.

The judgment and order appealed from, therefore, are reversed, and a new trial ordered, with costs to appellant to abide event. All concur.